UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:23-CR-00100-1-JRG-CRW |
| | ) | |
| CHEILA GONCALVES GARCIA | ) | |

## MEMORANDUM OPINION AND ORDER

This ancillary forfeiture proceeding is before the Court on the United States's Motion for Final Order of Forfeiture [Doc. 153] and third party petitioner M&M Car Wash Systems, Inc. #5 ("Petitioner" or "M&M Car Wash")'s Objections to the United States's proposed forfeiture order [Doc. 156]. As discussed below, Petitioner's Objections will be **SUSTAINED in PART** and **OVERRULED in PART**. The United States's Motion for Final Order of Forfeiture will be **GRANTED**, consistent with the Court's findings discussed below.

### I.   PROCEDURAL BACKGROUND

In January 2024, Defendant Cheila Garcia pled guilty to conspiracy to distribute 500 or more grams of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B) and possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A). [Doc. 44]. As part of her plea agreement, she agreed to forfeit her interest in the real property located at 1300 East Jackson Boulevard, Jonesborough, Tennessee 37659 ("the Property"). [Docs. 44, 52]. On January 22, 2024, the Court entered an Agreed Preliminary Order of Forfeiture, forfeiting Ms. Garcia's interest in the Property to the United States. [Doc. 58].[1]

---

[1] In May 2024, Ms. Garcia was sentenced and the Preliminary Order of Forfeiture became final as to her. [Doc. 99]. She did not appeal.

On January 23, 2024, M&M Car Wash filed a Petition for Ancillary Hearing, requesting that the Preliminary Order of Forfeiture be amended to recognize its perfected security interest in the Property. [Doc. 59].[2]

Petitioner moved for summary judgment in April 2024. [Doc. 76]. Asserting that summary judgment was premature, the United States requested discovery and an interlocutory sale of the Property. [Docs. 89, 97]. The Court granted discovery, holding summary judgment in abeyance, and denied the motion for interlocutory sale with leave to refile after the completion of discovery. [Docs. 93, 102, 112].

After the conclusion of the discovery period, the United States filed a response in opposition to summary judgment, arguing that Petitioner was not entitled to assert an interest in the Property because it acquired its lien with willful blindness to Ms. Garcia's criminal activity. [Doc. 127]. The United States also renewed its motion for interlocutory sale. [Doc. 135].

In mid-February 2025, consistent with her plea agreement, Ms. Garcia executed documents allowing the Property to be listed with a realtor. [Doc. 149 at 2; Doc. 149-2].

On February 21, 2025, the Court held a hearing on Petitioner's summary judgment motion. During oral argument, the United States conceded that Petitioner has a superior interest in the Property and clarified that the only real dispute was regarding the manner of sale. After hearing from both parties, the Court granted summary judgment to Petitioner, finding that Petitioner had a perfected security interest superior to any interest held by the government. [Doc. 148]. In hopes of maximizing the interests of both Petitioner and the United States, the Court instructed the parties to submit an agreement for the manner of sale or propose alternative procedures. The Court made

---

[2] Petitioner subsequently filed an Amended Petition, recognizing that Washington County and the City of Jonesborough have an interest in the Property for any unpaid property taxes owed to them. [Doc. 104].

clear that if the parties did not reach an agreement, the Property would be marketed according to the statutory framework. After the hearing, the Court issued a Memorandum Opinion and Order, granting summary judgment and denying the renewed motion for interlocutory sale as moot. [Doc. 148].

The parties did not reach an agreement regarding the manner of sale. Instead, on March 13, 2025, Petitioner submitted a "Proposal," suggesting that the United States be allowed to list the property with Evans & Evans Real Estate for an additional thirty days, after which time Petitioner would foreclose pursuant to the terms of the Deed of Trust. [Docs. 149, 151]. The United States submitted a "Notice of Unresolvable Issues," relating that it had tried multiple times to reach an agreement with Petitioner, without success, and that it was unwilling to relinquish its ability to sell the car wash. [Doc. 150 at 1, 7]. The United States filed a Motion for Final Order of Forfeiture on April 16, 2025. [Doc. 153].

On May 21, 2025, the United States emailed Petitioner's counsel and the Court a proposed final order of forfeiture, forfeiting the Property to the United States for disposition. [Doc. 153-3]. Petitioner filed Objections to the proposed order [Doc. 156], and the United States filed a Response [Doc. 157].

This matter is now ripe for review.

**II. DISCUSSION**

Petitioner raises four objections to the proposed final order of forfeiture: (1) that Petitioner should be allowed to foreclose on the Property, instead of the United States conducting the sale; (2) that if the United States is allowed to sell the Property, Petitioner should be permitted to enter a credit bid; (3) that attorney fees under the Deed of Trust should be included in its secured interest;

3

Case 2:23-cr-00100-JRG-CRW    Document 158    Filed 07/02/25    Page 3 of 10
PageID #: 1553

and (4) that the amount of accrued interest due to Petitioner should be specified. [Doc. 156]. The Court will address each of these objections in turn.

### A. Who Conducts the Sale

Petitioner's primary objection to the United States's proposed forfeiture order is that the order does not allow Petitioner to foreclose on the Property. [Doc. 156 ¶¶ 2−6]. The United States maintains, correctly, that Petitioner is barred from doing so. [Doc. 157 at 2−5].

Under § 853, the Attorney General has authority to dispose of forfeited property "by sale or any other commercially feasible means." 21 U.S.C. § 853(i)(4). This is true even when third party interests are implicated. *See* 21 U.S.C. § 853(h) (providing that after seizure of forfeited property, "the Attorney General shall direct the disposition of the property by sale or any other commercially feasible means, *making due provision for the rights of any innocent persons*.") (emphasis added). Accordingly, after ancillary petitions have been addressed, the Attorney General takes title to the forfeited property so that it can be sold. 21 U.S.C. § 853(n)(7) (directing that after the court's disposition of any ancillary petitions, "the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee.").[3]

A lienholder cannot sidestep the Attorney General's authority to dispose of forfeited property by pursuing separate civil litigation. Section 853(k) provides in relevant part that

> [e]xcept as provided in subsection (n), no party claiming an interest in property subject to forfeiture under this section may . . . (2) commence an action at law or equity against the United States concerning the validity of [its] alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

---

[3] The Attorney General's authority to dispose of forfeited property is delegated to the United States Marshals Service ("USMS"). 28 C.F.R. § 0.111(i).

21 U.S.C. § 853(k)(2). A foreclosure action constitutes "an action at law or equity against the United States" because under the relation-back clause, the United States's interest in forfeited property attaches at the time of the criminal activity giving rise to the forfeiture. *United States v. Phillips*, 185 F.3d 183, 187–88 (4th Cir. 1999) (citing 21 U.S.C. § 853(c)). Therefore, § 853(k) bars a secured creditor from seeking foreclosure as a means of asserting its interest in criminally forfeited property. *Id.*; *United States v. MacInnes*, 223 F. App'x 549, 553 (9th Cir. 2007) (holding that § 853(k) barred foreclosure sale even though lienholder's superior interest in the property had already been recognized in the criminal forfeiture order); *United States v. West*, No. 3:06-CR-92, 2007 U.S. Dist. LEXIS 15109, at *7 (E.D. Tenn. Mar. 2, 2007) (explaining that petitioners were not entitled to seek the state law procedural mechanism of foreclosure because that remedy was barred by § 853(k) and the Supremacy Clause of the Constitution).

Petitioner contends that the United States is "standing in the shoes of Ms. Garcia" and therefore "should not now be allowed to deviate or override the terms of that Deed of Trust." [Doc. 156 ¶ 6]. "While in many ways, the Government steps into the shoes of the previous owner when it takes title to real property by forfeiture under § 853, it does not do so entirely. Rather, § 853(k) extinguishes the right of lien holders and other interested parties to enforce their rights against the Government through separate civil litigation." *MacInnes*, 223 F. App'x at 553. Thus, the United States does not take title to the Property "subject to" the foreclosure provision in Petitioner's Deed of Trust.

In addition, Petitioner assures the Court that if permitted to foreclose, it will obtain title insurance and deliver marketable title to any potential buyer. [Doc. 156 ¶ 12]. However, whether Petitioner could successfully sell the Property is irrelevant since, absent an agreement with the United States, the Property must be disposed of by USMS. *See United States v. Denizard*, 2021

5

U.S. Dist. LEXIS 35137, at *6 (M.D. Fla. Feb. 23, 2021) (explaining that because "[t]he only mechanism for disposing of property subject to a federal criminal forfeiture is through a federal forfeiture sale . . . [w]hether a state foreclosure action would generate a better return is irrelevant.").

Accordingly, Petitioner's Objection to USMS conducting the sale of the Property is **OVERRULED**.

### B. Credit Bidding

Next, Petitioner contends that if it cannot pursue its own sale of the Property, it should at least "be permitted to bid on the property up to the unpaid balance owing to it without having to pay that money to the Government, while crediting the unpaid obligation with the amount of its bid." [Doc. 156 ¶ 13]. In other words, Petitioner requests permission to submit a credit bid.[4] The United States maintains that credit bidding is contrary to the USMS policy of selling property for fair market value. [Doc. 157 at 10]. Additionally, the United States claims that Petitioner should not be allowed to credit bid—or bid at all— because it acted "in concert" with Ms. Garcia. [Doc. 157 at 10].

The Court does not agree with the United States's argument that Petitioner should be prevented from bidding due to alleged complicity with Ms. Garcia. Under § 853(h), persons acting "in concert" with the defendant or on her behalf are ineligible to purchase property at a public sale conducted by the United States. 21 U.S.C. § 853(h). Here, the United States has alleged that Petitioner sold the Property to Ms. Garcia with willful blindness to her criminal activity. [Doc.

---

[4] "In a credit bid, a lender participates in a sale by bidding on the assets in exchange for a full or partial satisfaction of the debt. Normally, credit bidding is permitted when a secured creditor bids an amount equal to the value of its security interest. But the practice has been criticized for its potential to chill bidding and depress market value." *Alter Domus, LLC v. Winget,* No. 08-13845, 2024 U.S. Dist. LEXIS 60690, at *15 (E.D. Mich. Mar. 18, 2024). The issue of credit bidding often arises in bankruptcy proceedings, where courts have statutory authority to prohibit credit bidding for good cause. *See* 11 U.S.C. § 363(k) (providing that credit bidding is generally allowed "unless the court for cause orders otherwise").

6

Case 2:23-cr-00100-JRG-CRW   Document 158   Filed 07/02/25   Page 6 of 10
PageID #: 1556

127]. However, the United States has not established that Petitioner was, or is, complicit in the drug conspiracy that gave rise to the forfeiture. Indeed, as the United States previously acknowledged, the drug conspiracy did not even begin until a year after Ms. Garcia purchased the Property. [Doc. 71 ¶ 53]. Hence, on the record before the Court, there is not a basis for finding that Petitioner is barred from purchasing the Property under § 853(h).

The Court does agree with the United States that bidding should be conducted in accordance with USMS policy. As discussed above, the Attorney General has broad authority to dispose of criminally forfeited property "by sale or any other commercially feasible means." 21 U.S.C. § 853(h). USMS is not required to obtain the Court's approval of its plans for a sale of forfeited property. And Petitioner has not pointed to any cases where a court addressed credit bidding in a final forfeiture order. Accordingly, the Court concludes that the issue of credit bidding is beyond the scope of these proceedings and instead, should be decided in accordance with USMS policies. *See Denizard*, 2021 U.S. Dist. LEXIS 35137 (observing that an "ancillary proceeding is not a forum where the Government and claimants hash out how the property will be liquidated."). Because the procedures for conducting the sale should be decided by USMS policy, Petitioner's Objection, requesting permission to submit a credit bid, is **OVERRULED**.

C.   **Attorney Fees**

Petitioner also asserts that the proposed final order of forfeiture should have included attorney fees under the Deed of Trust. [Doc. 156 ¶ 8]. The United States does not directly respond to this objection, instead claiming that the Court "already rejected Lienholder's counsel's request for attorney fees" at oral argument on summary judgment. [Doc. 157 at 6]. However, that is incorrect. Although the issue of attorney fees was briefly discussed near the close of the hearing, the Court did not make a ruling on the issue.

The Court agrees with Petitioner that attorney fees under the Deed of Trust are part of its secured interest. While federal law governs the disposition of forfeited property, a secured creditor's property interest is determined by state law. *United States v. Franco*, No. 5:14CR00011, 2017 U.S. Dist. LEXIS 117457, at *7 (W.D. Va. July 26, 2017). As the Sixth Circuit has explained,

> because forfeiture proceedings implicate property rights which have traditionally been measured in terms of state law, and because section 853 contains no rule for determining the scope of property rights, it is appropriate to refer to state law in determining the nature of the property interest involved in a forfeiture proceeding.

*United States v. Harris*, 246 F.3d 566, 571 (6th Cir. 2001) (quoting *United States v. Smith*, 966 F.2d 1045, 1054 n. 10 (6th Cir. 1992)). Courts have held that costs and attorney fees expressly provided for in a loan agreement are part of a lienholder's secured interest in forfeited property. *United States v. Real Property*, 989 F.2d 1089, 1092 (9th Cir. 1993); *United States v. Fed. Nat'l Mortgage Ass'n*, 946 F.2d 264, 266 (4th Cir. 1991); *United States v. Real Property*, 920 F.2d 798, 799 (11th Cir. 1991); *United States v. Real Property*, 949 F.2d 374, 377 (10th Cir. 1991); *see also Harris*, 246 F.3d at 574 (finding that as with attorney fees and costs, innocent lienholders are entitled to pre-payment premiums expressly bargained for in their loan agreements).

When determining the applicability of an attorney fee provision, courts look to the language used in the loan agreement. *United States v. One 1993 Lexus LS 400*, No. 93 C 3922, 1994 U.S. Dist. LEXIS 3061, at *8 (N.D. Ill. Mar. 15, 1994) ("[A] court must carefully scrutinize a loan agreement to determine whether a provision entitling the lienholder to attorney's fees is general enough to apply in a drug forfeiture case."). Here, the Deed of Trust provides that if Ms. Garcia defaults on her loan payments and the Property is sold, "expenses, including attorneys' fees of any litigation which may arise on account of the execution and enforcement of this trust" will be paid from the proceeds of the sale. [Doc. 59-2 at 10]. The attorney fees in this provision are part

8

of Petitioner's secured interest, payable from the proceeds of the sale of the Property. Accordingly, Petitioner's objection regarding attorney fees is **SUSTAINED**.

The final attorney fee amount can be better determined after the sale of Property. Hence, the Court will not consider the amount of the attorney fees at this time. If after the Property has been sold, the parties are unable to agree on a satisfactory amount, Petitioner may request that the Court set a reasonable attorney fee, payable from the sale proceeds.

### D. Calculation of Interest

Finally, Petitioner objects because the proposed final order of forfeiture fails to include the amount of accrued interest owed to M&M Car Wash since Ms. Garcia's default in her installment payments. [Doc. 156 ¶ 8]. The United States acknowledges that Petitioner is entitled to the contractual rate of interest. [Doc. 157-3 at 4]. However, it contends that the balance only becomes relevant when payment is made from the net proceeds of the sale. [Doc. 157 at 6]. As with attorney fees, the Court believes that the interest amount will be best calculated after the Property has been sold. This objection is **OVERRULED**.

### III. CONCLUSION

For the reasons stated above, Petitioner's Objections to the proposed order of forfeiture [Doc. 153] are **SUSTAINED in PART** and **OVERRULED in PART**. Specifically, Petitioner's objection, asserting that attorney fees under the Deed of Trust should be included in the order, is **SUSTAINED** and Petitioner's other objections are **OVERRULED**. The United States's motion for entry of a final order of forfeiture [Doc. 156] is **GRANTED**. The Court will enter a Final Order of Forfeiture consistent with this opinion.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE